## ILLINOIS BANKERS' LIFE ASSUR. CO. v. PAYNE.

### No. 11296.

Court of Civil Appeals of Texas. Dallas.
June 24, 1933.

316

BOND, Justice.

Appellee, Maude A. Payne, insured, instituted this suit in the district court of Henderson County, against appellant, Illinois Bankers' Life Assurance Company, insurer, to recover the sum of $2,888, the alleged accumulated value of a life insurance policy for $2,000, of date April 30, 1919, which she claims was wrongfully and fraudulently canceled by appellant.

The case was tried to a jury on special issues and judgment rendered in appellee's favor in the sum of $725.91—i. e., for the amount of the several premiums paid on the policy, which the court found to be the sum of $492.75, together with annual interest at the rate of 6 per cent. per annum on each installment thereof from the date of its payment, found by the court to be the sum of $233.16.

It is evident that the judgment appealed from is not based upon the pleadings; appellee alleges in her petition that her policy for $2,000 bond, at the time of its wrongful cancellation, increased by accumulations to the value of $2,888, and seeks judgment for that sum, with interest thereon at the rate of 6 per cent. per annum from the date of the wrongful breach of the contract.

Where one party to an insurance contract, without right, refuses to perform its part, the insured may elect either to sue to recover damages for such breach, or agree to rescind the contract and sue to recover, with interest, the money paid under its terms. Appellee elected to sue for specific damages, and, without pleadings upon which to base same, was accorded judgment on a rescission of the contract and for the premiums paid, with interest.

The rule governing the measure of damages recoverable by an insured for a wrongful breach of a contract of insurance is not uniform among the courts of this state. We think the trend of modern thought is, however, that life insurance policies in sound companies, being classed as property of present value to the insured, his business associations, and finally to his beneficiaries, who have an insurable interest in his life, one wrongfully depriving the holder of such policy, or interested beneficiary therein, of the present or anticipated benefits arising from the covenants of the policy, may be liable in a suit for damages, and the measure of damages is the value of the policy at the date of its alleged breach. Loyal Friends, etc., v. Center (Tex. Civ. App.) 49 S.W.(2d) 898; Supreme Lodge K. of P. v. Neeley (Tex. Civ. App.) 135 S. W. 1046, 1048.

If the insured, at the time of such breach, is no longer an insurable risk, the present value of the policy is determined by

Ramey, Calhoun, Marsh & Higgins, of Tyler, for appellant.

Bishop & Holland, of Athens, for appellee.

deducting from the face of the policy the total amount of premiums required to carry the policy from the time of the breach to the end of the period, as provided by its terms. A sum of money equal to the interest on the remainder of the policy for the life expectancy of the insured should also be deducted from the face of the policy. The remainder of the face of the policy, after the two deductions, will constitute the present value, and is the damages recoverable by reason of a breach of the contract. The life expectancy of the insured, from the time of the breach of the contract, is a question of fact; the question is to be determined from competent life expectancy tables and from the physical condition of the insured at the time of the breach of the contract, if the insured was suffering from a bodily affliction, which might prove fatal or shorten the expectancy.

As a variation of the above rule, it may be stated that, if the physical condition of the insured, at the time of the breach of the contract, constituted an insurable risk, and if the insured can secure insurance of like character and value to that canceled, the measure of damages would be the difference between the costs of carrying the insurance which was canceled for the term stipulated, and the cost of the new insurance at the rate she would then be required to pay for a like term.

The repudiation of the contract of insurance does not necessarily require an action for damages on behalf of the insured. He may elect to stand upon his contract and perform, or offer to perform, all of the conditions required of him, and then, when the day of performance arrives, to enforce his contract, or he may elect to accord a rescission by the company and recover the premiums paid by him prior to the breach with annual interest from the date of payment.

The record reveals no evidence showing the value of the insurance policy at the time of the alleged breach, which value is the basis of appellee's alleged loss. Thus, in the absence of proof, corresponding to the remedy sought in appellee's petition, the judgment cannot be sustained. To be valid, a judgment must conform to the pleadings and proof. Article 2211, R. C. S.

In addition to a necessary finding by the trial court as to the proper measure of damages to appellee in accordance with the remedy pleaded is the ultimate determination of facts as to whether appellant unconditionally accepted a check sent by appellee in payment of the premium due before the expiration of the time allowed for payment before the policy of insurance lapsed.

The policy provides that premiums should be paid in advance at the home office of the insurer on or before due date, or within thirty-one days thereafter. The home office of the insurer is in the state of Illinois, and the residence of the insured is in Texas. Evidently some means of payment might be reasonably supposed to have been in the contemplation of the parties at the time the contract was made, by which the premiums could be sent from the home of the insured to the home office of the insurer; appellee adopted the means without direction or suggestion by the insurer or by one authorized to give such instructions.

The insured sent the payment by check through the United States mail; thus, such means became the agency of the sender, and such tender in payment of the premium due, under the terms of the policy, is insufficient to constitute payment, unless the check was unconditionally accepted as such by the insurance company, or by the course of dealing between the insured and insurer a custom existed under which the latter had accepted payments of the premiums by checks. Thus the inquiry should not be as to whether the check was tendered, but as to whether the check was received by the insurer in its home office within the grace period allowed by its policy, and was unconditionally accepted by it in payment of premiums due. It is well settled in this state that the mere sending of a check will not prevent a forfeiture; it must be unconditionally accepted. Mullins v. Hartford Life Ins. Co., 26 Tex. Civ. App. 383; 63 S. W. 909; Equitable Life Ins. Co. v. Cole, 13 Tex. Civ. App. 486, 35 S. W. 720; Continental Ins. Co. v. Stratton, 185 Ky. 523, 215 S. W. 416, 8 A. L. R. 391; Walls v. Home Ins. Co., 114 Ky. 611, 71 S. W. 650, 102 Am. St. Rep. 298; Kansas City Life Ins. Co. v. Elmore (Tex. Civ. App.) 226 S. W. 709.

In 32 C. J. p. 1201, the rule is stated as follows: "In the absence of provisions in the policy or contract of insurance permitting payment in some other manner premiums are payable in cash. * * * However, if payment in cash is waived by the company, the company may accept payment by check, draft, or order." The courts of this state have often held that a check may operate as the payment which will prevent a forfeiture where the insured is directed by the insurer, or by one of its agents having authority to give such direction, to remit his premiums in that manner, and it is likewise held that, where a custom has existed between the insured and the insurer, under which the latter has repeatedly accepted payment of premiums by checks, the custom renders the payment by check valid, and the acceptance of the checks in payment of premiums amounts to a waiver of the strict compliance with the terms of the policy. Custom or usage may justify a particular method of making payment of premiums, but such a custom or usage must be shown to

exist. Postal Ind. Co. v. Rutherford (Tex. Civ. App.) 49 S.W.(2d) 1115.

We are of opinion that this case should be reversed and remanded, and it is so ordered.

Reversed and remanded.