## NORTH RIVER INS. CO. OF NEW YORK v. REEDER.   (No. 3273.) *

(Court of Civil Appeals of Texas.   Texarkana.
Oct. 28, 1926.     Rehearing Denied
Nov. 11, 1926.)

**1. Insurance** ⊜349(3)—**Stipulation that fire policies should be suspended so long as notes given therefor remained unpaid held valid.**

Stipulation in fire insurance policy and notes therefor to effect that policy should be suspended, inoperative and of no force or effect so long as notes remained overdue and unpaid, *held* valid.

**2. Insurance** ⊜375(2)—**Collecting agent's failure to draw draft as requested by insured held not "waiver" by insurer of breach of stipulation suspending policy for nonpayment of notes for premiums.**

Conduct of collecting agent of insurer in failing to draw draft for unpaid note for premium after being authorized to do so by insured *held* not to constitute a "waiver" by insurer of breach of stipulation in policy and note suspending policy, in absence of testimony showing agent's authority to charge insurer with consequences of his act.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Waiver.]

**3. Principal and agent** ⊜105(9), 111(5)—**Collecting agent cannot extend time of payment nor accept anything other than money in payment of debt.**

Collecting agent, unless expressly authorized, cannot extend time of payment of debt due his principal nor bind principal by accepting anything other than money in payment thereof.

Error from District Court, Bowie County; Hugh Carney, Judge.

Action by John L. Reeder against the North River Insurance Company of New York. Judgment for plaintiff, and defendant brings error. Reversed and rendered.

By its policy dated October 9, 1922, plaintiff in error insured defendant in error (from said date to October 9, 1925) in the sum of $1,250 against loss by fire of a dwelling house identified as "No. 1" in the policy, and in the sum of $750 against the loss by fire of anoth-

er dwelling house identified as "No. 2" in said policy. The consideration to plaintiff in error for the policy was $18.28, paid to it at the time it issued same, and defendant in error's two promissory notes for $18.28 each, payable to plaintiff in error at McKinney, Tex.; one of them June 12, 1923, and the other June 12, 1924. It was stipulated in the policy that plaintiff in error should not be liable for any loss or damage to the property insured while any promissory note "given for premium remained past due and unpaid"; and it was stipulated in each of the promissory notes above referred to that, if it was not paid at its maturity, the policy should "be suspended, inoperative, and of no force or effect so long" as the note "remained overdue and unpaid." The dwelling house identified in the policy as "No. 2" was destroyed by fire November 8, 1924. At that time the promissory note first mentioned above had been paid, but the other one, then past due, had not been paid; and the fact that it had not was urged by plaintiff in error as a defense against the recovery sought by defendant in error of the amount of the insurance (to wit, $750) on said house No. 2. At the conclusion of the testimony the court instructed the jury to return a verdict for defendant in error, and, they having done so, rendered judgment in his favor against plaintiff in error for the sum of $729.91, the amount of said insurance less $20.09, the amount of said unpaid note.

Thompson, Knight, Baker & Harris and Pinkney Grissom, all of Dallas, for plaintiff in error.

Johnson & Waters, of New Boston, for defendant in error.

WILLSON, C. J. (after stating the facts as above). [1] The stipulations in the policy and notes referred to in the statement above were valid ones. Thomas v Insurance Co. (Tex. Com. App.) 277 S. W. 1041; Insurance Co. v. Baggett (Tex. Civ. App.) 275 S. W. 313; Duncan v. Insurance Co., 113 Tex. 305, 254 S. W. 1101. As they were, and as it appeared that the note due June 12, 1924, had not been paid November 8, 1924, when the fire occurred, the judgment should have been in favor of plaintiff in error, unless it appeared from the testimony heard at the trial that it was guilty of conduct which deprived it of a right to set up the violation of the stipulations as a defense against the recovery sought against it. Defendant in error insisted in the court below and insists here that it appeared plaintiff in error (acting by its local agent at New Boston, one J. W. Eddins, who issued the policy sued upon) was guilty of such conduct, and, as supporting its contention, refers to testimony in the record showing facts as follows: Defendant in error instructed Eddins to draw drafts on him for the premium of the policy as the parts thereof became due, and arranged with the New Boston National Bank to pay the drafts. Eddins accordingly drew drafts for the part of the premium payable at the time the policy was executed and for the part covered by the note which matured June 12, 1923, and said drafts were paid by said bank. At or about the time the note maturing June 12, 1924, became due, defendant in error requested Eddins to have the time of payment thereof extended until the fall of that year, so he could pay it out of the proceeds of cotton he expected then to sell. Thereupon Eddins wrote to plaintiff in error about the matter, and it was agreed to extend the time of payment to October 12, 1924. "Along about the 1st or 2d of November" after that date, and before the fire occurred, plaintiff in error having instructed him to "either collect the note or take up the policy and mail it to them," Eddins notified defendant in error that plaintiff in error had written him that the "note was due and that the extension was up." Thereupon "I told him," defendant in error said, testifying as a witness, "that I guessed I would have to pay it, and I told him that I would get the money. We talked a while and later on I told him just to go to the bank and make a draft on me for the money, and he said, 'Well'; and I never heard anything more about it until after the fire, when I found out that Mr. Eddins did not get the money and that the note was not paid. He told me that he had forgotten it. I then offered him the cash, and he refused to take it." Had Eddins drawn a draft on defendant in error for the amount of the note and presented same to the bank, the bank would have paid it.

[2] There was testimony that, as to the policy sued upon, Eddins was merely a soliciting agent. Defendant in error insists, and we agree, that, while Eddins may have been that kind of an agent so far as the issuance of the policy was concerned, he was plaintiff in error's collecting agent so far as the unpaid premium due on the policy was concerned. But we do not agree with defendant in error that, treating Eddins as such a collecting agent, his conduct as shown in the facts stated above constituted a waiver by plaintiff in error of the breach by defendant in error of the stipulations in the policy and note in question, and operated to estop it from setting up the failure of defendant in error to pay said note at the expiration of the time to which payment thereof had been extended as a defense against recovery by defendant in error of anything on account of the policy.

[3] A collecting agent, unless expressly authorized to do so, cannot extend the time of payment of a debt due his principal (Behrns v. Rogers [Tex. Civ. App.] 40 S. W. 419); nor can he, with authority only to collect, bind his principal by accepting anything other than money in payment of such a debt (Manufacturing Co. v. Maverick [Tex. Civ. App.] 23

S. W. 728; Assur. Soc. v. Cole, 13 Tex. Civ. App. 486, 35 S. W. 720; Zang v. Realty Co. [Tex. Civ. App.] 125 S. W. 85).

As we view it, there is nothing in the record before us showing authority in Eddins (had he pretended to do so and he did not) to bind plaintiff in error by an agreement to further extend the time of payment of the note, nor anything showing authority, express or implied, in Eddins (had he pretended to do so, and we think he did) to accept anything except money in payment of the note in question.

The most defendant in error can contend for as supporting his view is that Eddins agreed with him to draw on him through the bank for the amount of the unpaid premium represented by the note; that, had Eddins so drawn on him, the draft would have been paid; and that the note remained unpaid at the time of the fire because Eddins failed to keep his promise to him.

If, as we think appeared in the testimony, Eddins was without authority to bind plaintiff in error by such a promise, defendant in error had no right to charge plaintiff in error with the consequences of Eddins' failure to keep it. As defendant in error did not possess such a right, it is clear there was no merit in his claim that plaintiff in error had waived its right to set up his failure to pay the past-due note before the fire occurred as a defense against the recovery awarded to him, and that the judgment, therefore, should have been in plaintiff in error's favor.

It will be reversed, and judgment will be rendered here that defendant in error take nothing by his suit against plaintiff in error, and that the latter recover its costs of the former.